**STATE of Tennessee, Appellee,**

v.

**Vincent L. BOYD, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 4, 1992.

Permission to Appeal Dismissed March 8, 1993.

Richard H. Winningham, Chattanooga, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, C. Mark Fowler, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., Bates W. Bryan, Jr. and Rodney C. Strong, Asst. Dist. Attys. Gen., Chattanooga, for appellee.

## OPINION

PEAY, Judge.

The defendant was found guilty by a jury of having committed grand larceny and burglary of a business house. For these offenses the trial judge sentenced him to serve two consecutive three year terms.

In this appeal the defendant challenges the validity of both his indictments and his convictions. He contends that:

> (1) the Hamilton County Board of Jury Commissioners Act, 1931 Tenn.Priv.Acts ch. 564, is unconstitutional because Hamilton County's population no longer falls within the range set forth in the act and that the act violates Article XI, § 8 of the Tennessee Constitution as there is no rational basis for Hamilton County to have a procedure different from that of the general jury provisions found in Title 22 of the Tennessee Code Annotated;

(2) the local act is unconstitutional because the jury commission is automatically excluding large classes and categories of citizens;

(3) the local act is being unconstitutionally administered because the secrecy clause has been violated by an unsworn assistant's selecting the names which make up the master jury list; and,

(4) the trial judge erred in not instructing the jury as to the missing witness rule.

While noting irregularities in the Hamilton County jury selection process, we find that the defendant has not shown sufficient grounds for relief; therefore, the judgment of the trial court is affirmed.

Because the facts of the case are not in dispute and do not bear directly upon the issues raised by the defendant, they may be summarized in brief detail. On February 27, 1989, Pickett's, a retail establishment in Chattanooga, Tennessee, was burglarized. The defendant was seen entering a nearby bar carrying a large grocery sack. Police officers entered the bar and found the defendant with the stolen articles.

■ The facts most pertinent to this appeal concern the Hamilton County Board of Jury Commissioners Act and the manner in which the master lists for Hamilton County's juries have been compiled. The local act in question was passed by the state legislature in 1931 and provided that any county with a population between 159,000 and 160,000 would establish a jury selection process as prescribed by the act. Hamilton was the only county affected as it alone had a population falling within that range. Under this act a board of three jury commissioners was to be elected, and these commissioners were to select the names of those comprising the master jury list from which the grand and petit juries are drawn. In 1959, the legislature passed a general board of jury commissioners act which replaced the various private acts governing jury selection state wide; however, Hamilton, Davidson, and Knox Counties were exempted from this general jury law and allowed to retain their own jury selection procedures. T.C.A. § 22-2-101.

In his first issue the defendant contends that the local act is no longer applicable because Hamilton County has exceeded the act's population ceiling. As noted above, the local act provides that it shall be applicable to counties with a population of no less than 159,000 nor more than 160,000 according to the federal census of 1930 or any subsequent federal census. When the local act was passed, Hamilton County's population was approximately 159,497 but by 1989 it was over 287,740. We do not dispute the defendant's contention that Hamilton County has exceeded the population range set forth in the local act; however, we find that the act remains applicable to Hamilton County.

Our Supreme Court squarely addressed this issue in *Hall v. State*, 124 Tenn. 235, 137 S.W. 500 (1910). The Court determined that "[i]t is immaterial whether the population of a county falling within a class created when the act was passed increases or decreases". *Hall*, 137 S.W. 500, 503. A county once within a population classification may not drop out of the class, regardless of changes in that county's population, until the legislation is specifically repealed. *Hall*, 137 S.W. 500, 502–03. As the legislature repealed all private acts governing the selection of juries except those applicable to counties with populations falling within a particular range which included Hamilton County, the county's growth has not rendered the act inapplicable.

■ In response to several of the following contentions, the State alleges that the defendant waived these matters by failing to argue certain specific grounds at the lower court level. To support these assertions the State relies upon T.R.A.P. 3(e), which provides a guide for proper appeals when a new trial is being sought. However, the defendant is not only seeking a reversal of his convictions but is also asking that his indictments be dismissed. Since the defendant is not seeking a new trial, his appeal is not covered by T.R.A.P. 3(e); therefore, the State's contention concerning waiver is without merit.

Within his first issue the defendant also argues that the local act violates Article XI,

§ 8 of the Tennessee Constitution which provides that:

> [t]he Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunity, or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

Citing *Knoxville Community Development Corp. v. Knox County*, 665 S.W.2d 704, 705 (Tenn.1984), he adds that if an act is local in effect and contravenes the general law, the provisions of Article XI, § 8 of the state constitution must be satisfied, and any special classifications must rest upon reasonable grounds. The defendant argues that the local act contradicts the general law and does not have a reasonable basis.

■ The burden of showing that the classification is not reasonable is upon the party attacking the statute. *Hart v. City of Johnson City*, 801 S.W.2d 512, 516 (Tenn. 1990); *Harwell v. Leech*, 672 S.W.2d 761, 763–64 (Tenn.1984). However, the defendant fails to specify what makes the population classification of the local act unreasonable. While making the blanket statement that "there is no reason for a population differential on jury selection acts", he puts forth no proof or evidence of such unreasonableness. No statistics or comparisons of similar counties are used to demonstrate a problem with the local act. In short, the defendant has failed to carry his burden of proving that the population classification in the local act is unreasonable.

■ We do, however, note that credible arguments exist in support of the population classification in the local act. There is no general rule by which to judge what is a reasonable classification and what is not; the question is a practical one depending on the circumstances of each case. *Hart*, 801 S.W.2d 512, 516; *Harwell*, 672 S.W.2d 761, 763. Looking at the local act itself, it does not clearly state the reasons for its population classification, but such is not necessary. *See Harwell*, 672 S.W.2d 761, 763. Our Supreme Court has concluded that if any possible reason can be conceived or is fairly debatable for the classification, then it should be upheld. *Hart*, 801 S.W.2d 512, 516; *Harwell*, 672 S.W.2d 761, 763.

■ Certainly it can be argued that counties with larger populations need a jury selection process more specifically designed to meet their needs. A larger population means a larger potential jury pool; thus, there must be a system for reducing the potential jurors down to a manageable number while still maintaining a viable cross-section of the community. In addition, a more populous county may have a larger bureaucracy and more complex records and files available to the jury selection committee.[1]

■ In his second issue the defendant contends that the local act is unconstitutionally administered because the jury commissioners automatically exclude large classes of people from the jury pool. Following similar exemptions to those listed in T.C.A. § 22–1–103, the Hamilton County jury summons notes that doctors, practicing attorneys, those over sixty-five years of age who are disabled, and others may claim an exemption from service. However, as a practical matter, one of the Hamilton County jury commissioners testified that the names of doctors, lawyers, clergymen, people over the age of seventy-five, and those who have not voted are not even included on the jury list.

■ Although the defendant contends that this action violates both his state and federal constitutional rights, the state claim may be summarily dismissed as he bases it on Article XI, § 8 of the Tennessee Constitution. This section is intended as a limitation on the power of the State Legislature as is made

---

1. The general act excluded the second, third, and fourth most populous counties but included Shelby, the most populous; however, specific provisions were made applicable to Shelby County alone (once again by use of population classifications). *See* T.C.A. §§ 22–2–201(b), –204(b), –309(b)(1).

clear by the following language: "The Legislature shall have no power to suspend any general law ...". No mention is made concerning the power of local governments or agencies; thus, as we are dealing with the actions of a county jury commission and not the State Legislature, Article XI, § 8 does not apply.

■ The defendant also argues that the exclusion of these large groups violates the fair cross-section requirement as mandated by the federal constitution. While a jury roll need not be a perfect mirror of the community, it must represent a fair cross-section of the population. *State v. Blunt*, 708 S.W.2d 415, 417 (Tenn.Crim.App.1985). To demonstrate

a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive group' in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979); *see Blunt*, 708 S.W.2d 415, 417–18; *State v. Nelson*, 603 S.W.2d 158, 161 (Tenn.Crim.App. 1980).

If the groups of people excluded qualify as legally distinctive groups, the defendant has proven all three requirements. By one of the jury commissioner's own testimony, certain classes of people are automatically excluded by the jury commission; thus, they certainly are not fairly represented in relation to their numbers in the community. This commissioner also admitted that the exclusion of these groups from the jury lists resulted from the commission's long established system of selection.

■ Although the second two prongs would be satisfied, the difficulty in this case lies in determining what constitutes a "dis-

tinctive group" as required by the above test. This Court has adopted the standard that a distinctive group must be "cognizable" and has recognized three factors to be considered when determining what is a cognizable group. These are: "(1) the presence of some quality or attribute which defines and limits the group; (2) a cohesiveness of attitudes or ideas or experience which distinguishes the group from the general social milieu; and (3) a community of interest which may not be represented by other segments of society". *Nelson*, 603 S.W.2d 158, 163.

■ Using this test, we find that the defendant has failed to prove that any of the classes of people being excluded by the Hamilton County jury commissioners are cognizable groups. While the defendant contests the commissioners' use of registered voters who have actually voted, he fails to show that those who do not vote have a cohesiveness of attitudes, ideas, or experiences which may not be represented by others in the community. The only attribute that nonvoters can be said to share is the choice not to participate in the election process.

■ Our Supreme Court has held that the use of voter registration lists to select potential jury members is constitutional. *State v. Caruthers*, 676 S.W.2d 935, 939 (Tenn.1984), *cert. denied*, 469 U.S. 1197, 105 S.Ct. 981, 83 L.Ed.2d 982 (1985). "Voter registration lists are generally considered the most inclusive list of names for potential jurors." *Jefferson v. State*, 559 S.W.2d 649, 653 (Tenn.Crim.App.1977).[2]

■ Given the validity of using voter registration lists to select potential jurors, the exclusion from jury duty of those who do not register to vote is acceptable. As noted by the trial judge, it also seems reasonable to restrict the list to those who have actually voted in the past four years because this is a practical way of determining that the person's address is correct and that he or she still resides in the county. We find no violation of the fair cross-section requirement because those who do not register or those who

---

**2.** However, although not mandated, other types of records (such as electric company rolls) may be an excellent supplementation to voter registra-

tion lists in order to prevent "a chilling effect on the exercise of the franchise". *Jefferson*, 559 S.W.2d 649, 653.

register but fail to vote are excluded from the jury list.

■ In addition, the defendant presented no evidence that doctors, lawyers, or clergymen represent distinctive groups. Even though those within these groups share the same profession, no proof was submitted that they share unique attitudes, ideas, or experiences. Therefore, we do not find that members of the professions excluded by the jury commission constitute cognizable groups.

■ We further find that those over the age of seventy-five should not be considered as a distinctive class. This Court has previously stated that it was not willing "to say that the age of sixty-five should mark the boundary for a cognizable element of society". *Blunt,* 708 S.W.2d 415, 418. More precisely, this Court has determined that "persons within a specific age group do not constitute a distinct identifiable class in the general population". *Teague v. State,* 529 S.W.2d 734, 739 (Tenn.Crim.App.1975). People over the age of seventy-five have a myriad of attitudes, ideas, and experiences and should not be considered as a cognizable group.

■ While the defendant has failed to prove that the automatic exclusion of these classes of people from the jury list is unconstitutional, it should be noted that the Hamilton County Jury Commission is overstepping its authority by prescreening the persons on the jury list. Although the county's own jury summons prescribes that members of certain groups may claim an exemption if they so desire, the commission seems to be determining that everyone in an exempted class would take their exemption. Many in the prescribed classes might actually wish to serve on a jury; however, even if, as a practical matter, most would claim their exemption, the commission should not make that decision for these individuals.

■ When interpreting the general jury law, specifically T.C.A. § 22–1–103, Tennessee courts have stated that occupational and disability exemptions are personal to the individual, to be claimed or waived by that person alone. *East v. State,* 197 Tenn. 644, 277 S.W.2d 361, 362 (1955); *Smith v. State,* 566 S.W.2d 553, 558 (Tenn.Crim.App.1978). In *Smith* the Court recognized that the removal of certain groups of people from the jury list on the jury commission's own initiative was incorrect. However, the Court refused to overturn the defendant's conviction on these grounds. *Smith,* 566 S.W.2d 553, 558. Similarly, in this case, the jury commission has gone beyond the bounds of its authority. Thus, while the defendant pointed out an incorrect manner of excluding certain groups of people, the error supports neither the dismissal of his indictments nor the reversal of his convictions.

■ In his third issue the defendant argues that the local act is unconstitutionally administered because an assistant of the commission engages in the selection of jurors. Although the local act provides that every jury commissioner shall take an oath to keep secret the actions of the jury commission, one of the commissioners testified that her assistant "works the [voter registration] books" thereby selecting names to be placed on the master jury list. Since the assistant is not a jury commissioner and has not taken the prescribed oath, the defendant contends that the secrecy clause of the local act has been violated and that his convictions should, therefore, be overturned.

In advancing this contention, the defendant relies upon the authority of *Rutherford v. State,* 219 Tenn. 331, 409 S.W.2d 535 (1966). Through this case the Tennessee Supreme Court stated that "[o]ne of these two elements—(1) the pointing out of the alleged irregularity and taking exception thereto before the jury is sworn, or (2) the presence of fraud, is indispensable" in order to affect the validity of the jury's actions. *Rutherford,* 409 S.W.2d 535, 536. In the present case objection to the jury selection process was timely made before the jury was sworn. However, we believe that the *Rutherford* Court did not find that the timely raising of an objection standing alone was sufficient to invalidate a jury's actions; it simply concluded that if fraud is not present, an objection must be raised before the jury is sworn as a prerequisite to the consideration of any irregularities in the jury selection

process. *See Rutherford,* 409 S.W.2d 535, 536.

The defendant has failed to prove that any of the jury commissioners or their assistant acted with prejudice or perpetrated any fraud when selecting names for the jury list. While the defendant does argue that the actions of the assistant amount to constructive fraud, he fails to explain why this is true or to offer any evidence to prove this contention. Constructive fraud has been defined as "a breach of a legal or equitable duty, with or without fraudulent intent ... which reasonably can be expected to influence the conduct of others". *Parks v. Alexander,* 608 S.W.2d 881, 891 (Tenn.Ct.App. 1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2019, 68 L.Ed.2d 326 (1981). There is no evidence that any action of the jury commission or its assistant in any way influenced the conduct of the jury or anyone else connected with the defendant's trial. Furthermore, the defendant has waived the issue by failing to cite any authority for this proposition of constructive fraud. *State v. Killebrew,* 760 S.W.2d 228, 231 (Tenn.Crim.App.1988); *State v. McMiller,* 614 S.W.2d 398, 401 (Tenn. Crim.App.1981).

Even if it were true that the prospective jurors were selected in an improper manner, this would create a de facto grand jury, and its acts would still be valid. *Flynn v. State,* 203 Tenn. 337, 313 S.W.2d 248, 251 (1958), *cert. denied,* 358 U.S. 839, 79 S.Ct. 65, 3 L.Ed.2d 75 (1958). The departure from the prescribed method of impaneling a grand jury, in the absence of fraud or prejudice, does not render that grand jury illegal nor its acts invalid. *Flynn,* 313 S.W.2d 248, 251. As has been stated, there is no evidence of fraud offered in this case. Therefore, the defendant's indictments remain valid.

In addition, no petit juror indicated that he or she was personally selected by the jury commissioners to sit on the defendant's jury. There is no evidence to suggest the defendant was prejudiced in any way by the acts of the jury commission or that the outcome of the defendant's trial was influenced by Hamilton County's jury selection process. Therefore, while the actions of the Hamilton County Jury Commission were not in full compliance with its prescribed procedure, the error was harmless. *See* Tenn.R.Crim.P. 52(a).

In his final issue the defendant contends that the trial judge erred in not instructing the jury as to the missing witness rule. Apparently one of the officers testifying at the trial indicated that another officer had actually written the report on the defendant's case, but the prosecution chose not to call the author of the report. In view of these facts, the defendant requested that the jury be instructed that the absence of this witness "raises an inference that his testimony would have been unfavorable to the prosecution and favorable to the defendant"; however, the trial judge refused to do so.

This Court has held that in order to trigger a missing witness instruction, the witness who was not called must not have been equally available to both parties. *State v. Overton,* 644 S.W.2d 416, 417–18 (Tenn.Crim. App.1982); *Bolin v. State,* 4 Tenn.Cr.App. 387, 472 S.W.2d 232, 235 (1971). There is no reason to believe that the officer who wrote the report was not equally available to both parties. Through counsel the defendant did not claim to have been unaware of this officer, but instead contended that the officer was "under the control of the prosecution". We see no evidence that the State attempted to hide the existence of this potential witness, nor does the record reflect that defense counsel sought to talk with this officer. There is also no indication that the officer would have refused to do so had he been approached.

Furthermore, to justify a missing witness instruction it must be shown that "one of the parties had peculiarly available to him a witness with peculiar knowledge of the material facts". *State v. Eldridge,* 749 S.W.2d 756, 758 (Tenn.Crim.App.1988). No evidence was presented by defense counsel that this officer had peculiar knowledge of material facts. The officers who did testify provided overwhelming evidence against the defendant, and there is no indication that the other officer's testimony would have set forth anything different. *See Conboy v. State,* 2

338

Tenn.Cr.App. 535, 455 S.W.2d 605, 611 (1970). There is no proof that his role in the investigation extended beyond filling out paperwork. We, therefore, find that the trial court's denial to instruct the jury as to the missing witness rule was appropriate.

For the reasons set out above, the judgment of the trial court is affirmed. However, the Hamilton County Jury Commission's practice of using an unsworn assistant and of automatically excluding those individuals who may claim an exemption is improper and, as such, should be discontinued.

JONES and TIPTON, JJ., concur.